IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

DOROTHY SCHMITZ, JILL SCHMITZ-
NOBLE, BILL SCHMITZ, LaDONNA
OLIPHANT, NEELEY SCHMITZ, and
DAVID SCHMITZ,

                Plaintiffs,

vs.                                     Case No. 10-CV-4011-SAC

GRANT L. DAVIS,

                Defendant.

MEMORANDUM AND ORDER

This case comes before the court on defendant's motion to dismiss pursuant to Fed. R.Civ. Pro. 12(b)(1) and (b)(6).

**Dismissal standard**

In resolving a motion to dismiss, the court applies a plausibility standard to determine whether the complaint includes enough facts that, if assumed to be true, state a claim to relief that is plausible on its face. *Ashcroft v. Iqbal*, --- U.S. ----, ----, 129 S.Ct. 1937, 1949, 173 L.Ed.2d 868 (2009) ("A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."). *See also Mink v. Knox*, __ F.3d __, 2010 WL 2802729, *2 (10th Cir. 2010). The court accepts all factual allegations in the complaint as true and draws all reasonable inferences in favor of the nonmoving party, here the plaintiffs. *See Archuleta v. Wagner*, 523 F.3d 1278, 1283 (10th Cir. 2008). The court is not, however, bound to accept as true a legal conclusion couched as

a factual allegation. *Iqbal*, 129 S.Ct. at 1949-50.

In evaluating a Rule 12(b)(6) motion to dismiss, the court may consider not only the complaint itself, but also attached exhibits and documents incorporated into the complaint by reference. *Smith v. United States*, 561 F.3d 1090, 1098 (10th Cir. 2009) (internal citations omitted.) "[N]otwithstanding the usual rule that a court should consider no evidence beyond the pleadings on a Rule 12(b)(6) motion to dismiss, 'the district court may consider documents referred to in the complaint if the documents are central to the plaintiff's claim and the parties do not dispute the documents' authenticity.' " *Alvarado v. KOB-TV, L.L.C.*, 493 F.3d 1210, 1215 (10th Cir. 2007). Here, the Settlement and Release Agreement is such a document.

**Background**

The plaintiffs are the surviving widow and children of William Schmitz. Before his death, William Schmitz was one of hundreds of plaintiffs who filed individual suits against Robert Courtney (a Missouri pharmacist who admitted to diluting chemotherapy drugs) and against Eli Lilly and Co. and Bristol-Myers Squibb Co. (BMS) (the drug manufacturers). William Schmitz, who used the diluted drugs, and approximately 80 of the other plaintiffs were represented by attorney Grant Davis, the present defendant. William Schmitz settled his drug dilution case[1] against those defendants in late 2002, as did most if not all of the other plaintiffs, via a global settlement, in which he signed a Settlement and Release Agreement. Plaintiffs now allege legal malpractice by Grant Davis related to that settlement.

---

[1]The court will refer to the underlying case which was resolved by the settlement agreement as the "drug dilution" case, for ease of reference.

Among the other settling plaintiffs represented by Grant Davis was a family named Tilzer. After settling, they brought a legal malpractice case against Grant Davis, his law firm, and others. That case, *Tilzer v. Davis, Bethune & Jones, LLC. et al*, is relevant to this case because it supplies background about the global settlement that the parties have not provided,[2] and because the Kansas Supreme Court's decision in the *Tilzer* case is alleged to have triggered the running of the statute of limitations in this case. Accordingly, the court finds it necessary and helpful to discuss some of the *Tilzer* case.

The Tilzers apparently failed or refused to pay Grant Davis or his law firm fees incurred for his representation of them in the drug dilution case, so the firm filed an attorney's lien for its fees. On January 14, 2004, Judge Lee E. Wells of the Missouri State Court granted a motion to enforce the attorney's lien for fees to Davis, Bethune & Jones, who appeared through defendant, Grant Davis.

Judge Wells' order on the attorney's lien issue provides details of the settlement in the Tilzer case, which frame the settlement posture of this case as well. More than 300 cases were filed against defendants Eli Lilly and BMS in that Court arising out of the dilution of chemotherapy drugs by Robert Courtney. Tilzer had agreed to pay defendant's firm, Davis, Bethune & Jones, a contingent fee of 40%, 10% of which was to be shared with another attorney. In October of 2002, Eli Lilly and BMS advanced a settlement proposal to the Courtney claimants. Under that settlement proposal, each plaintiff could elect whether to participate in the settlement or to continue litigating his

---

[2]The parties refer the court to the *Tilzer* case. See Dk. 1, p. 3; Dk. 7, p. 3.

individual case, but defendants could cancel the proposed settlement agreement if they determined that too many claimants failed to opt in to the settlement agreement. Whether the agreement required all claimants to participate is unclear. A minimum and maximum range of global settlement amount was set, but the exact size of the settlement fund was undetermined and would be established in later arbitration. Each family's recovery from the fund would thereafter be decided by a special master. Tilzers were told that nearly all of the 300 claimants except them had already opted in to the settlement, before they agreed to settle and signed in the proposed settlement it in December of 2002. Tilzers were awarded a confidential amount in 2003 by the special master, which Judge Wells found to be "one of the highest awards" made. Dk. 7, Exh. 4, p. 9. Tilzers were dissatisfied with the amount of the award and objected to it, to no avail.

In resolving the attorney's lien issue, Judge Wells found no credible evidence that the Tilzer's decision to participate in the settlement was the product of any misrepresentation, coercion or duress by defendant's law firm. Judge Wells held that the terms of the settlement were not per se violative of Rule 4-1.8 of the Missouri Rules of Professional Conduct. Judge Wells further found that the settlement was not an aggregate settlement. He found that the Tilzers had sufficient information to make an informed decision regarding participation in the settlement agreement, that the law firms had no conflict of interest in representing them and their other clients before the Special Masters, and that any conflict was also waived. In short, Judge Wells found each claim of attorney misconduct Tilzers raised in opposition to the attorney's lien to be unsupported.

The Tilzers did not appeal that Missouri attorney's lien order. Instead, the Tilzers filed a legal malpractice action in Johnson County, Kansas, against Davis, Bethune & Jones, not unlike the present case against Grant Davis.³ That case alleged breach of fiduciary duty, professional negligence, negligent misrepresentation, breach of contract, and fraud arising from Davis' representation of them in the settled case. It specifically alleged that the Release and Settlement agreement was an aggregate settlement and that Davis had failed to comply with the disclosure requirements of Missouri's Rule of Professional Conduct 4-1.8(g).

Defendant Davis responded in the *Tilzer* malpractice case by moving for summary judgment, claiming that the issue of an aggregate agreement had already been decided by Judge Wells in the Missouri attorneys' lien case, thus relitigation of that issue was barred by collateral estoppel. The Johnson County district court agreed, finding that Tilzers had been required to assert their malpractice claims as compulsory counterclaims in the Missouri attorneys' lien action, and that relitigation was barred by collateral estoppel and res judicata.

The Tilzers appealed that decision and the Kansas Supreme Court reversed it on April 3, 2009, finding no issue or claim preclusion. *Tilzer v. Davis, Bethune & Jones, LLC*, 288 Kan. 477, *cert. denied*, __ US __, 130 S.Ct. 507 (2009). Among other matters, the Kansas Supreme Court held that Tilzer's settlement of their claims against the pharmaceutical companies was an "aggregate settlement" to which Missouri's statutory requirements of disclosures and client consent applied. The case was remanded and

---

³The Tilzers also filed a federal case against the law firm, which was dismissed for lack of diversity jurisdiction.

discovery is currently ongoing.

The plaintiffs in this case allege they learned about the Kansas Supreme Court's *Tilzer* opinion on December 27, 2009, and soon thereafter filed this legal malpractice suit against Grant Davis.

**Applicable law**

In a diversity action, the court applies the substantive law of the forum state, including the choice of law rules. *Klaxon Co. v. Stentor Elec. Mf. Co.*, 313 U.S. 487, 496-97, 61 S.Ct. 1020, 85 L.Ed. 1477 (1941), *cert. denied*, 316 U.S. 685 (1942); *State Farm Mut. Auto. Ins. Co. v. Boellstorff*, 540 F.3d 1223, 1228 (10th Cir. 2008). Plaintiffs assert claims of negligence, breach of fiduciary duty, and fraud, all arising out of defendant's legal representation. Dk. 1, p. 7. Plaintiffs' claims are essentially that defendant violated duties imposed by law to inform them of the consequences of entering into an aggregate settlement of their case against Eli Lilly and BMS. As a result, this action sounds generally in tort.[4] *See Pancake House, Inc. v. Redmond*, 239 Kan. 83, 87, 716 P.2d 575 (1986) (citing *Bowman v. Doherty*, 235 Kan. 870, 686 P.2d 112 (1984)); *Elder v. Herlocker*, 2009 WL 1863999, 7 (D.Kan. 2009).

In deciding tort claims, Kansas courts continue to follow the longstanding rule of lex loci delicti. *Anderson v. Commerce Const. Services, Inc.*, 531 F.3d 1190 (10th Cir. 2008). Tort claims are thus decided by the law of the place where the tort occurred. *Ling v. Jan's Liquors*, 237 Kan. 629, 634, 703 P.2d 731 (1985). In this case, plaintiffs' injury occurred in the state in which they reside and in which they will suffer the economic

---

[4]This result is underscored by the fact that plaintiffs have not asserted a breach of a contingent fee agreement or other written contract of employment.

effects of the alleged malpractice. The Complaint alleges that plaintiffs are all residents of the State of Missouri. Dk. 1, p. 1. Accordingly, the court will apply the substantive law of the state of Missouri to this issue.

**Proper defendant**

Defendant first contends that the case is subject to dismissal because plaintiffs have failed to join a party indispensable to plaintiff's disgorgement claim. Defendant believes that his law firm, Davis, Bethune & Jones, LLC, is the only proper defendant to plaintiffs' disgorgement claim, since that is the entity which received the attorneys fees from the disputed settlement.[5]

The complaint seeks disgorgement as a remedy, not as a claim for relief. Dk. 1, p. 7, para. 42. Disgorgement is an equitable remedy which seeks to strip the wrongdoer of ill-gotten gains and deter improper conduct. *See United States v. Nacchio*, 573 F.3d 1062, 1079 (10th Cir. 2009). The amount to be disgorged must be causally related to the wrongdoing, and needs only be a "reasonable approximation" of illegal profits. *Id*, 573 U.S. at 1080.

Defendant does not assert that he did not receive any attorneys fees by virtue of the disputed settlement. The court notes that the normal course of events would be for defendant's law firm to initially receive such fees, then to pay a percentage or other portion of them to defendant. Disgorgement, if any, from the defendant may be limited to the amount received by the defendant. The court finds that disgorgement is an equitable remedy and not a separate claim, that plaintiffs' complaint seeks damages in

---

[5] Joinder of this law firm, an LLC, would likely destroy diversity jurisdiction.

addition to or alternatively with the remedy of disgorgement, that disgorgement against this defendant may be proper in some amount, and that the case is not subject to dismissal for the absence of the named law firm.

**Failure to state a claim**

### Statute of limitations

Defendant next contends that plaintiffs' claims are barred by the statute of limitations. The parties agree that the disputed Settlement Agreement was executed on November 4, 2002, and that this case was not filed until February 3, 2010.

In diversity cases, the Court applies the statute of limitations applicable under the law of the forum state, even when the action is brought under the law of another state. *See, e.g., Dow Chem. Corp. v. Weevil-Cide Co.*, 897 F.2d 481, 483-84 (10th Cir.1990); *Miller v. Armstrong World Indus., Inc.*, 949 F.2d 1088, 1089 n. 3 (10th Cir.1991). The Kansas limitations period for tort claims is two years, K.S.A. 60-513(a)(4), and its statute of repose is ten years. *See* K.S.A. § 60-513(b) ("... in no event shall an action be commenced more than 10 years beyond the time of the act giving rise to the cause of action.")

### Accrual

Defendant contends that this action accrued in mid-2003 (when the settlement agreement payment was made) and was never tolled, so expired in mid-2005. Plaintiffs contend that the action did not accrue, or was tolled, until they learned in December of 2009 about the April 3, 2009 decision by the Kansas Supreme Court in the *Tilzer* legal

malpractice case, discussed above.[6]

Under Kansas law, the statute of limitations for torts generally accrues when:

> the act giving rise to the cause of action first causes substantial injury, or, if the fact of the injury is not reasonably ascertainable until some time after the initial act, then the period of limitation shall not commence until the fact of the injury becomes reasonable ascertainable to the injured party ...

Kan. Stat. Ann. § 60-513(b). The term "substantial injury" is not intended to imply that the plaintiff must have knowledge of the full extent of his injuries before the statute of limitations begins; rather, a plaintiff simply must have "sufficient ascertainable injury to justify an action for recovery of the damages." *Rigby v. Clinical Reference Lab., Inc.*, 995 F.Supp. 1217, 1222 (D.Kan.1998) (quoting *Roe v. Diefendorf*, 236 Kan. 218, 689 P.2d 855 (1984)).

> For purposes of commencing the statute of limitations running, the fact of injury becomes reasonable ascertainable either when the alleged tortious conduct has first caused substantial injury or at the point when the plaintiff either knew or reasonable should have ascertained that the alleged tortious conduct caused plaintiff to be injured. *Id.* (citing Kan. Stat. Ann. § 60-513(b)). In determining the date upon which an injury is reasonably ascertainable, a court must "invoke an objective standard based on an examination of all the surrounding circumstances." *Id.* Further, "Kansas law does not require that the plaintiff have ironclad actual knowledge about his injury, but rather he have such notice as would permit him to discover the injury with the use of due diligence. 'Reasonably ascertainable' does not mean 'actual knowledge.' " *Austin v. U.S. Bank, Nat'l Ass'n.*, No. 03-4130, 2006 WL 980739, at *11 (D.Kan. Jan.25, 2006).

*Hutton v. Deutsche Bank AG*, 541 F.Supp.2d 1166, 1169-70 (D.Kan. 2008).

The Kansas Supreme Court has recognized several theories for determining when a legal malpractice claim accrues. *Canaan v. Bartee*, 276 Kan. 116, 72 P.3d 911 (adopting exhoneration rule for criminal malpractice cases, to promote judicial

---

[6]Plaintiffs do not offer any details of how they learned of the *Tilzer* decision or why they remained unaware of it for over eight months after it was decided.

economy), *cert. denied*, 40 U.S. 1090 (2003). The appropriate theory depends on the specific facts and circumstances of each case. *See e.g., Dearborn Animal Clinic* (finding legal malpractice cause of action accrued on date when it was evident to the plaintiff that its attorney had negligently prepared an option contract rather than a mandatory purchase contract); *Elder v. Herlocker*, 2009 WL 1863999 (D.Kan. 2009) (finding son's injury in receiving no real property in the father's was reasonably apparent by the time of plaintiff's first appearance in the probate proceedings, when the estate had been distributed to others); *Hjersted Family Ltd. Partnership v. Hallauer,* 2009 WL 902428, 4 (D.Kan. 2009) (finding attorneys' allegedly negligent conduct caused injury which became reasonably ascertainable on the date of the probate court's ruling denying the claim on the estate); *Berberich v. Payne & Jones, Chartered*, 3 F.Supp.2d 1199 (D.Kan.1998) (holding plaintiff's legal malpractice claim had not yet accrued under Kansas law where underlying dispute between clients and IRS was still ongoing); *Reich v. Braun*, 986 F.2d 1428, 1993 WL 33877, *7 (10th Cir.1993) (Table) (finding attorney lulled plaintiff into inaction, but legal malpractice cause of action nonetheless accrued when a foreclosure judgment gave plaintiff notice to investigate the cause of her liability on a promissory note); *F.D.I.C. v. Gantenbein*, 1992 WL 279772, 3 (D.Kan. 1992) (finding plaintiff became aware of problems with the loans on which the legal malpractice action was based when it received the critical reports from the FHLBB); *Pancake House, Inc. v. Redmond*, 239 Kan. 83, 87, 716 P.2d 575 (1986) (finding cause of action for legal malpractice accrues when the journal entry from the underlying action is filed).

      Defendant asserts that plaintiffs' injury was reasonably ascertainable no later

than mid-2003 when the settlement payment was made. Dk. 7, p. 12. In support of this assertion, defendant notes that plaintiffs are represented in this case by the same attorney who represented the Tilzers in their case against his law firm, filed in the fall of 2003. Defendant presumably contends that plaintiffs could have ascertained their injury as soon as did the Tilzers. The court is not persuaded by this analysis, which imputes an attorney's knowledge to these plaintiffs at a time the attorney was not shown to have been employed by them. *See In re Edmonds*, 110 B.R. 38, 40 (D.Kan. 1989) ("The law is well-settled that the knowledge acquired by an attorney *during the time he is acting within the scope of his employment* is imputed to the client. *Armstrong v. Ashley*, 204 U.S. 272, 283, 27 S.Ct. 270, 274, 51 L.Ed. 482 (1907); *Hess v. Conway*, 92 Kan. 787, 142 P. 253, 255 (1914)."), *reversed on other grounds*, 924 F.2d 176 (10th Cir.1991) (italics added).

The only other rationale expressed by defendant is that plaintiffs' complaint shows that they were aware in 2003 of "at least some of the events" which they now allege as a basis for their claim against him. Dk. 7, p. 12. This is immaterial, since a plaintiff has no cause of action until he can establish the causation element of a legal malpractice claim. *Canaan,* 276 Kan. at 131. *See also Pancake House*, 239 Kan. at 87 (citations omitted) ("The true test when an action accrues is that point in time at which the plaintiff could first have filed and prosecuted his action to a successful conclusion."); *Holmes v. Boal*, 2005 WL 2122315, 4-5 (D.Kan. 2005). *See generally Scaletty*, 257 Kan. at 355.

> The issue then is when plaintiff knew or should have known that she sustained an injury as the result of [the attorney's] malpractice. In a legal malpractice action, the statute of limitations does not necessarily begin to run with the

plaintiff's knowledge of an injury; rather, the action accrues when the plaintiff reasonably ascertains that the fact of the injury is the result of the attorney's past negligence.

*Dearborn Animal Clinic, P.A. v. Wilson*, 248 Kan. 257, 270, 806 P.2d 997 (1991).

In *Tilzer*, the Kansas Supreme Court held among other matters, that the Tilzer's settlement of their claims against the pharmaceutical companies was an "aggregate settlement" so that Missouri's statutory requirements of disclosures and client consent applied to this defendant.[7] In so finding, the Supreme Court effectively rebuffed the contrary 2004 ruling by Judge Wells of Missouri in the attorney's lien case. Neither party shows any events prior to January of 2004 which would have put the plaintiffs on notice that they may have been injured by virtue of defendant's acts involving the settlement of the diluted drugs cases. From January 14, 2004, when Judge Wells issued his decision on defendant's attorney's lien, until April 3, 2009, when the Kansas Supreme Court reversed the lower court, the status of the facts and the law was that Tilzer's settlement, and by comparison, Schmitz's settlement, was *not* an aggregate settlement and that defendant did nothing wrong in handling it. Had plaintiffs filed their legal malpractice suit before April 3, 3009, their case likely would have been dismissed because of the pendency of other relevant proceedings. *See Mo-Kan Teamsters Pension Fund v. Creason*, 669 F.Supp. 1532, 1543 (D.Kan. 1987) ("...in Kansas a litigant should not be forced into court prior to adjudication of an appeal in which the grounds for the

---

[7]Missouri Supreme Court Rule of Professional Conduct 4-1.8(g) provides:
g) A lawyer who represents two or more clients shall not participate in making an aggregate settlement of the claims of or against the clients ... unless each client gives informed consent, in a writing signed by the client. The lawyer's disclosure shall include the existence and nature of all the claims ... involved and of the participation of each person in the settlement.

12

contemplated lawsuit, be it malicious prosecution or attorney malpractice, could be eliminated and the lawsuit avoided.") Accordingly, the court finds that until April 3, 2009, plaintiffs' injury, if any, arising from defendant's handling of the aggregate settlement was not reasonably apparent to them. This suit, having been filed within two years of that date, is timely.[8]

**Violation of ethics rule**

Defendant next asserts that plaintiffs' cause of action for his alleged violations of the Missouri Rules of Professional Conduct should be dismissed. Defendant asserts that an attorney's violation of a rule of professional conduct does not constitute legal malpractice, citing from the following portion of the "scope" provision of those Rules:

> Violation of a Rule should not itself give rise to a cause of action against a lawyer nor should it create any presumption in such a case that a legal duty has been breached. ... The Rules are designed to provide guidance to lawyers and to provide a structure for regulating conduct through disciplinary agencies. They are not designed to be a basis for civil liability. ... Accordingly, nothing in the Rules should be deemed to augment any substantive legal duty of lawyers or the extra-disciplinary consequences of violating such a duty.

Missouri Supreme Court Rules of Prof. Conduct Rule 4, Scope. The court agrees that a violation of disciplinary rules does not per se constitute tort liability. See *Greening v. Klamen*, 652 S.W.2d 730 (Mo.App. E.D. 1983). On the other hand, a lawyer who violates disciplinary rules is not shielded from tort liability by virtue of the above-quoted passage.

The court has reviewed the complaint and finds that it does not portend to state a separate claim for defendant's violation of Rule 1.8(g) of the Missouri Rules of

---

[8]The court finds it unnecessary to reach the issues of equitable estoppel, tolling, and fraudulent concealment.

Professional Conduct, although it cites that rule in support of its claim of breach of common law fiduciary duty. Attorney conduct which violates an ethics rule may also violate an independent legal duty and a cause of action may ensue. *See e.g., Wasserstrom v. Appelson*, 1988 WL 878409 (W.D.Mo.1988). It is the violation of the independent legal duty, not the ethics rule, that gives rise to a tort cause of action. Nonetheless, Missouri courts "frequently look to these Disciplinary Rules in order to determine the duty owed a client," *Id.*, and have held that "the duties imposed due to this fiduciary obligation are essentially codified in the Missouri Supreme Court's Rules of Professional Conduct for Attorneys." *McRentals, Inc. v. Barber,* 62 S.W.3d 684, 697 (Mo.App. W.D. 2001) (citing Rule 4-1.8). The court finds it unnecessary to decide now the extent to which the Missouri disciplinary rules may inform its analysis of the scope of the duties owed by defendant in this tort case.

**Fraud**

Lastly, defendant contends that plaintiffs have failed to state a claim of fraud with particularity, as is required by Fed. R. Civ. P 9(b). *See U.S. ex rel. Lacy v. New Horizons, Inc.*, 348 Fed.Appx. 421 (10th Cir. 2009).[9]

> To meet the requirements of Rule 9(b), a pleading must include "such matters as the time, place and contents of false representations, as well as the identity of the person making the misrepresentation and what was obtained or given up thereby." *Bennett v. Berg*, 685 F.2d 1053, 1062 (8th Cir.1982). "[C]onclusory allegations that a defendant's conduct was fraudulent and deceptive are not sufficient to satisfy the rule." *Commercial Prop. Invs., Inc. v. Quality Inn Int'l, Inc.*, 61 F.3d 639, 644 (8th Cir.1995).

---

[9]Missouri's substantially identical rule requiring the pleading of fraud with particularity, VAMR 55.15, has been interpreted not to apply to claims of constructive fraud. *See Kratky v. Musil,* 969 S.W.2d 371, 377 (Mo.App. W.D. 1998).

14

*Wiley v. Mitchell*, 2004 WL 1687882, 2 (8th Cir. 2004). Rule 9(b)'s purpose is to afford defendant fair notice of plaintiff's claims and the factual ground upon which they are based. *Koch v. Koch Industries, Inc.*, 203 F.3d 1202, 1236 (10th Cir. 2000) (internal quotations and citations omitted), *cert. denied*, 531 U.S. 926 (2000).

Under Missouri law, fraud may be based on the misrepresentation of a material fact by silence. *Kansas City Downtown Minority Dev. Corp. v. Corrigan Assocs. Ltd. P'ship*, 868 S.W.2d 210, 219 (Mo.App. W.D.1994). The same elements required to establish fraud by an affirmative misrepresentation must be proven in a fraud by silence claim. *Zubres Radiology v. Providers Ins. Consultants,* 276 S.W.3d 335, 340 (Mo.App. W.D. 2009); *See Centerre Bank of Independence v. Bliss*, 765 S.W.2d 276, 283-84 (Mo.App. W.D. 1988) (listing elements); *Blaine v. J.E. Jones Constr. Co.,* 841 S.W.2d 703, 705 (Mo.App.1992) (holding in a fraud by silence case, the affirmative duty to disclose and the failure to do so serve as a substitute for the false representation element required in a fraud action).

The court has reviewed this complaint. Plaintiffs have alleged an attorney-client relationship, giving rise to a duty to disclose. Plaintiffs have alleged that defendant was aware of the true facts surrounding the settlement, that defendant induced or persuaded them to act upon his advice regarding the settlement, that plaintiffs justifiably relied upon defendant's advice in signing the settlement agreement, and were injured because of it. It specifically alleges that before defendant advised plaintiffs to execute the settlement and release in the fall or winter of 2002, defendant failed to tell plaintiffs that "it was in Defendant's personal financial interest to advise Plaintiffs and his other clients to participate in the aggregate settlement," and defendant failed to inform them of the

existence and nature of all the claims involved and of the participation of each person in the settlement. Dk. 1, p. 4, 5. Defendant allegedly did not disclose to plaintiffs that the value of their claim would not be based solely on its own merit or on individual case-by-case facts and negotiations, or that an increase in an award to another plaintiff would directly reduce the amount of their own award, or that their participation in the settlement, along with the other plaintiffs' participation, was necessary or advantageous to the defendant.[10] The consequences of the alleged fraud are also detailed. The court finds sufficient Rule 9 pleading of the elements of fraud under Missouri law.[11]

IT IS THEREFORE ORDERED that defendant's motion to dismiss (Dk. 6)[12] is denied.

---

[10]Because the terms of the settlement have been redacted from the record in this case, the court is unable to be more specific. It is possible that the "confidentiality provision" of the settlement agreement, which allegedly precludes the court from viewing the content of the settlement in this case, affects plaintiffs' pleading, as well.

[11]Even if the complaint had failed to plead fraud with particularity, the normal course in federal court would be to permit plaintiffs to amend, rather than to dismiss such claims. Fed.R.Civ.P. 15(a)(2). *Compare Bohac v. Walsh,* 223 S.W.3d 858, 863 (Mo.App. E.D. 2007) (Under Missouri law, if any essential element of fraud is not properly pleaded, the petition is fatally defective and subject to dismissal.)

[12]The Court notes, as the parties will, that this order is substantially similar to the Court's order on the motion to dismiss in the case of *Scott Booth, et al, v. Grant Davis*, No. 10-4010. After carefully scrutinizing the parties' claims, the Court found the complaints, motions, memoranda and accompanying exhibits in the *Booth* case to be nearly identical to those in this case, so took this approach in an effort to promote judicial efficiency, achieve consistency in the Court's rulings, reduce delay, and increase fairness to the parties.

Dated this 23rd day of September, 2010, at Topeka, Kansas.

                                            s/ Sam A. Crow
                                            Sam A. Crow, U.S. District Senior Judge