# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF KANSAS

DOROTHY SCHMITZ, *et al.*,        )
                                   )
                    Plaintiffs,    )
                                   )
v.                                 )          Case No. 10-4011-RDR
                                   )
GRANT DAVIS,                       )
                                   )
                    Defendant.     )

## MEMORANDUM AND ORDER

This matter comes before the Court upon Plaintiffs' Motion to Compel Grant Davis' Full and Complete Responses to Plaintiffs' First Requests for Production (ECF No. 53). Defendant opposes the motion. For the reasons explained below, Plaintiffs' motion to compel is granted in part and denied in part. The Court defers ruling on Defendant's contention that some responsive documents are attorney-client privileged and/or are protected attorney work product and therefore not subject to disclosure.

### I.        Procedural Conference Requirement

The Federal Rules of Civil Procedure and this district's local rules require a moving party to confer with opposing counsel about the discovery dispute before filing a motion to compel. Fed. R. Civ. P. 37(a)(1) provides that a motion to compel "must include a certification that the movant has in good faith conferred or attempted to confer with the person or party failing to make disclosure or discovery in an effort to obtain it without court action." This district's local rules expand on the movant's duty to confer, stating that a " 'reasonable effort' to confer means more than mailing or faxing a letter to the opposing party."[1] It requires the parties in good faith

---

[1] D. Kan. Rule 37.2.

to "converse, confer, compare views, consult and deliberate, or in good faith attempt to do so."[2] The local rule also requires the movant to "describe with particularity the steps taken by all attorneys to resolve the issues in dispute"[3] so that the court can evaluate efforts to confer. When determining whether the moving party has satisfied the duty to confer, the court looks beyond the sheer quantity of contacts and examines their quality as well:[4]

> When the dispute involves objections to requested discovery, parties do not satisfy the conference requirements simply by requesting or demanding compliance with the requests for discovery. The parties need to address and discuss the propriety of asserted objections. They must deliberate, confer, converse, compare views, or consult with a view to resolve the dispute without judicial intervention. They must make genuine efforts to resolve the dispute by determining precisely what the requesting party is actually seeking; what responsive documents or information the discovering party is reasonably capable of producing; and what specific, genuine objections or other issues, if any, cannot be resolved without judicial intervention.[5]

In this case, Plaintiffs have filed a Certificate of Compliance, which certifies that Plaintiffs' counsel discussed this discovery dispute with defense counsel prior to filing the motion to compel.[6] The filing lacks detail about the nature of their efforts to confer, leaving the Court unable to evaluate the quality of the parties' contacts. In its discretion, the Court will consider the merits of Plaintiffs' motion. In the future, the parties must submit a sufficiently detailed statement of their attempts to confer. The undersigned is disinclined to consider future

---

[2] *Id.*

[3] *Id.*

[4] *Cotracom Commodity Trading Co. v. Seaboard Corp.*, 189 F.R.D. 456, 459 (D. Kan. 1999); *P.S. v. The Farm, Inc.*, No. 07-2210-JWL-DJW, 2008 WL 3884312, at *2 (D. Kan. Aug. 19, 2008).

[5] *Id.* at 459.

[6] Certificate of Compliance with Duty to Confer at 1, ECF No. 54.

motions involving discovery disputes unless the parties have made good faith attempts to resolve the issues among themselves first.

## II.  Background

Plaintiffs' counsel filed this and three other legal malpractice actions in the District of Kansas against Defendant Grant Davis.[7] The plaintiffs in these actions are the individuals or survivors of individuals who filed suits against Robert Courtney—a Missouri pharmacist who diluted chemotherapy drugs—and against drug manufacturers Eli Lilly & Company and Bristol-Myers Squibb Company. Defendant represented approximately eighty of the three-hundred-plus plaintiffs in these Missouri state court suits, including the plaintiffs who filed suit in this District. Plaintiffs contend Defendant's actions related to an alleged aggregate settlement resolving the Missouri state court actions constitute legal malpractice.

Plaintiffs assert that Defendant advised his clients to opt into a finite lump-sum settlement agreement with the pharmaceutical companies—a settlement agreement Plaintiffs say created serious conflicts of interest. They allege the conflicts arose between Defendant and his clients because Defendant had an interest in obtaining a higher aggregate fee if his clients agreed to the settlement. Plaintiffs also contend the settlement agreement created serious conflicts of interest among Defendant's clients, who became competitors for their respective shares of a finite lump sum to be divided among them.

In the briefing on a prior discovery dispute, Plaintiffs presented some evidence indicating the settlement agreement contemplated that a special master would prepare a methodology for evaluating the participating plaintiffs' respective claims and would develop criteria to allocate

---

[7] *See Booth, et al. v. Davis*, 10-4010-RDR; *Carrel v. Davis*, 10-4124-RDR; *Kirkengaard v. Davis,* 10-4125-RDR.

the settlement fund. The judge presiding over those cases appointed two special masters for the purpose of evaluating the claims and making a recommendation regarding apportionment of the fund. The discovery dispute presently before the Court involves Plaintiffs' Request for Production of Documents, which seeks various documents related to the settlement agreement, how the lump-sum settlement was allocated, and the nature of other claims competing for the fund.

## III. Discussion

Fed. R. Civ. P. 26(b)(1) provides that "[f]or good cause, the court may order discovery of any matter relevant to the subject matter involved in the action." When a party fails to make disclosure or discovery, the opposing party may file a motion to compel. When a party files a motion to compel and asks the court to overrule certain objections, the objecting party must specifically show in its response to the motion how each discovery request is objectionable.[8] Objections initially raised but not supported in response to the motion to compel are deemed abandoned.[9] However, if the discovery requests appear facially objectionable in that they are overly broad or seek information that does not appear relevant, the burden is on the movant to demonstrate how the requests are not objectionable.[10] With this standard in mind, the Court turns to the discovery at issue.

In response to the motion to compel, Defendant relies on several broad objections to the document requests. He argues the Heath Insurance Portability and Accountability Act of 1996

---

[8] *Sonnino v. Univ. of Kan. Hosp. Auth.*, 221 F.R.D. 661, 670-71 (D. Kan. 2004).

[9] *Cardenas v. Dorel Juvenile Grp., Inc.*, 232 F.R.D. 377, 380 n.15 (D. Kan. 2005) (citing *Sonnino*, 221 F.R.D. at 670); *Cotracom*, 189 F.R.D. at 662.

[10] *See Goodyear Tire & Rubber Co. v. Kirk's Tire & Auto Servicenter of Haverstraw, Inc.*, 211 F.R.D. 658, 663 (D. Kan. 2003) (citing *Steil v. Humana Kan. City, Inc.*, 197 F.R.D. 442, 445 (D. Kan. 2000)).

(HIPAA)—more specifically, the regulations that set forth the HIPAA Privacy Rule, 45 C.F.R. 164.512(e)(1)(v)—prohibits him from producing his clients' medical records. He contends the patient-physician privilege shields from discovery client medical records in his possession, and he contends medical records and other personal information about his clients are not relevant to the claims and defenses in this action. He further claims at least some of the document requests are overly broad and unduly burdensome and also that certain requests seek information protected by the attorney-client privilege and/or work product doctrine. Finally, Defendant briefly argues much of the information Plaintiffs seek is subject to confidentiality agreements and protective orders from the underlying Missouri state court actions. Importantly, Defendant did not initially assert all of these objections in response to each request for production, and indeed, many of the objections would not apply to certain document requests. Nevertheless, in his response brief, Defendant attempts to support broad categorical objections rather than specifically identifying what is objectionable about each discovery request. Therefore, the Court will also address Defendant's objections in the same manner.

## A. Relevance

Relevant information need not be admissible at trial so long as it is reasonably calculated to lead to the discovery of admissible evidence.[11] The Court broadly construes relevance at the discovery stage of litigation, and "a request for discovery should be considered relevant if there is 'any possibility' that the information sought may be relevant to the claim or defense of any party."[12] "There is no presumption in the Federal Rules of Civil Procedure that a discovery

---

[11] Fed. R. Civ. P. 26(b)(1).

[12] *Sheldon v. Vermonty*, 204 F.R.D. 679, 689 (D. Kan. 2001) (quoting *Scott v. Leavenworth Unified Sch. Dist. No. 453*, 190 F.R.D. 583, 585 (D. Kan. 1999)).

request is relevant."[13]  However, relevance is often apparent on the face of the request.[14]  When it is not, the proponent of the discovery has the burden to show the relevance of the discovery sought.[15]  If a discovery request seeks facially relevant information or if the proponent has demonstrated relevance, the party resisting discovery must establish the lack of relevance by demonstrating that the requested discovery either: (1) is outside the scope of relevance as defined by Rule 26(b), or (2) is of such marginal relevance that the potential harm occasioned by discovery would outweigh the ordinary presumption in favor of broad discovery.[16]

Plaintiffs argue that Defendant's clients' medical records and other personal information are relevant for two reasons.  First, Plaintiffs state this information pertains to their claim that Defendant should forfeit the fees he received as part of their settlement.  Plaintiffs state that the manner in which Defendant "orchestrated" the settlement and Defendant's treatment of the participating plaintiffs bears on the determination of whether Defendant's fees are subject to forfeiture.  It is not apparent how medical information and other documents relating to the participating plaintiffs in the underlying settlement would help Plaintiffs in this action establish how Defendant treated his clients, and Plaintiffs offer no explanation how this is the case.  Accordingly, this information does not appear facially relevant to Plaintiffs' forfeiture claim.

Plaintiffs also argue this claim is relevant to their alleged damages.  Plaintiffs contend the "true" settlement value of their claims against the pharmaceutical companies provides the basis

---

[13] *Presbyterian Manors, Inc. v. Simplexgrinnell, L.P.*, No. 09-2656-KHV, 2010 WL 3880027, at *7 (D. Kan. Sept. 28, 2010) (citing *Thompson v. Jiffy Lube Int'l, Inc.*, 05-1203-WEB, 2007 WL 608343, at *8 n.20 (D. Kan. Feb. 22, 2007)).

[14] *Id.* (citing *Thompson*, 2007 WL 608343, at *8 n.20).

[15] *Id.* (citing *Thompson*, 2007 WL 608343, at *8 n.20; *Pulsecard, Inc. v. Discover Card Servs.*, 168 F.R.D. 295, 309 (D. Kan. 1996)).

[16] *See id.* at *8 (citing *Gen. Elec. Capital Corp. v. Lear Corp.*, 215 F.R.D. 637, 640 (D. Kan. 2004)).

for determining their damages in this action. They cite some authority in support of their position.[17] Plaintiffs contend information about other plaintiffs in the Missouri state court litigation could help them evaluate the true settlement value of the underlying claims against the pharmaceutical companies. Apart from this, Plaintiffs also contend that other documents—such as those relating to the settlement agreement and the allocation of the settlement fund by the special master—could be relevant as to the extent Defendant may have breached a duty to his clients. Indeed, the majority of the factual allegations in Plaintiffs' complaint center on the settlement agreement and Defendant's conduct concerning the settlement, including the advice provided to his clients. Information concerning the settlement agreement and allocation of the fund could foreseeably bear on the nature and extent of the alleged breach of duty. Accordingly, the Court finds Plaintiffs have shown the information could be relevant for the purpose of damages and for determining Defendant's alleged breach of duty. Therefore, the burden shifts to Defendant to establish either lack of relevance or that the information is of such marginal relevance that the harm occasioned by the discovery would outweigh the general presumption in favor of discovery.

Defendant argues that information concerning other plaintiffs' participation in the settlement is not relevant to damages because he contends the measure of Plaintiffs' damages is not whether they would have obtained a more favorable settlement from the pharmaceutical companies but for Defendant's acts. Rather, Defendant believes Plaintiffs must prove "the case within a case:" that Plaintiffs would have prevailed in the underlying suit against the

---

[17] *See Sanders v. Townsend*, 509 N.E.2d 860, 863 (Ind. Ct. App. 1987) ("As for damages, the majority of recent cases requires a plaintiff, in proving attorney negligence in the context of challenging a settlement or jury award as inadequate, must show, had the attorney not been negligent, the settlement or verdict award would have been greater."), *vacated in part on unrelated grounds*, 582 N.E.2d 355 (Ind. 1991).

pharmaceutical companies and would have obtained a higher jury verdict. Defendant cites

Missouri appellate opinions in support of his position that Plaintiffs must prove they could have

prevailed at trial and obtained a more favorable jury verdict.[18] The facts and issues presented in

the majority of those cases, however, are distinguishable from the facts and issues presently

before the Court.[19] The holdings cannot be read to indicate that plaintiffs in legal malpractice

actions arising from a settlement are barred from *proving damages* by showing they could have

obtained a more favorable settlement. Accordingly, the majority of the case law Defendant cites

is not persuasive.

The exception is *Novich v. Husch & Eppenberger*, a 2000 opinion from the Missouri

Court of Appeals, in which the court considered a legal malpractice action tangentially related to

a settlement. The plaintiff in *Novich* was a corporate shareholder who personally guaranteed the

corporation's obligations under a lease.[20] Defendants had briefly represented the plaintiff,

Nicholas Novich, and the other guarantors in an underlying suit for damages under the lease.[21]

---

[18] *See Novich v. Husch & Eppenberger*, 24 S.W.3d 734, 735-36 (Mo. Ct. App. 2000) (rejecting a plaintiff's contention that he need only offer evidence that he could have settled a claim against him for less than his actual liability and noting, "[A] plaintiff must prove that his underlying claim would have been successful even if the malpractice action arises out of a settlement because even frivolous claims may have settlement value"); *see also Day Adver., Inc. v. Devries & Assoc., P.C.*, 217 S.W.3d 362, 367 (Mo. Ct. App. 2007); *Mogley v. Fleming*, 11 S.W.3d 740, 749 (Mo. Ct. App. 1999); *O'Neal v. Agee*, 8 S.W.3d 238, 241 (Mo. Ct. App. 1999); *Lange v. Marshall*, 622 S.W.2d 237, 238-39 (Mo. Ct. App. 1981).

[19] *See, e.g., Day Adver., Inc.*, 217 S.W.3d at 367 (finding the trial court did not commit plain error when it allowed defendants to present evidence regarding issues having to do with the underlying claim despite defendants' failure to plead these issues); *Mogley*, 11 S.W.3d at 749 (noting that an attorney's statement to his client that the attorney believed the case had a settlement value of $285,000 did not establish the defendant in the underlying suit would have actually settled the case); *O'Neal*, 8 S.W.3d at 240-41 (deciding whether the district court abused its discretion in granting a new trial in a legal malpractice action arising from a settlement agreement that allegedly inadvertently released two defendants in the underlying action); *Lange*, 622 S.W.2d at 238-39 (finding that plaintiff failed to show she suffered damage as a proximate cause of defendant's alleged negligence arising from a settlement agreement that was ultimately never adopted).

[20] *Novich*, 24 S.W.3d at 735.

[21] *Id.* at 736.

The attorneys obtained leave to withdraw as counsel, and with the exception of Novich, the guarantors obtained new counsel and settled the suit.[22]  Novich then filed a legal malpractice action against his former attorneys, claiming he was unaware they had accepted service of suit on his behalf, entered an appearance, or sought leave to withdraw.[23]  He claimed that if had he known, he would have negotiated the same settlement as the other guarantors.[24]  The court rejected Novich's theory, noting, "We hold that a plaintiff must prove that his underlying claim would have been successful even if the malpractice action arises out of a settlement because even frivolous claims may have settlement value."[25]

Even *Novich* is factually distinguishable from this case, albeit less so than the other authority Defendant cites.  Unlike here, the attorneys in *Novich* were not involved with negotiating the settlement or advising their client to agree to the settlement.  Indeed, Novich never settled his case.  Moreover, Novich admitted liability in the underlying suit, essentially conceding he could not prove the case-within-the-case in the legal malpractice action.  Plaintiffs in this action certainly do not concede as much.  The Missouri Court of Appeals also noted the lack of legal support for Novich's damages theory; whereas here, there is authority supporting Plaintiffs' position.[26]

---

[22] *Id.*

[23] *Id.*

[24] *Id.*

[25] *Id.* at 736-37.

[26] *See Sanders*, 509 N.E.2d 860, 863-64; *see also Royal Ins. Co. of Am. v. Miles & Stockbridge P.C.*, 138 F. Supp. 2d 695, 707 (D. Md. 2001) (discussing under what circumstances legal malpractice plaintiffs may prove damages by showing they could have received a more favorable settlement) (citing *Thomas v. Bethea*, 718 A.2d 1187 (Md. Ct. App. 1998); *Slovensky v. Friedman*, 49 Cal. Rptr. 3d 60, 67-68 (Cal. Ct. App. 2006) ("Thus, a plaintiff who alleges an inadequate settlement in the underlying action must prove that, if not for the malpractice, she would certainly have received more money in settlement or at trial.  Such claims are likely to be speculative . . .;

Most importantly, neither party cites, nor is the Court aware of, any Missouri Supreme Court opinion addressing this issue. The undersigned previously informed the parties they could file a motion for determination of a point of law that asks the district judge to rule on the appropriate standard. To date, the parties have declined to do so. As such, the Court will not bar discovery aimed at showing Plaintiffs could have received a more favorable settlement.

Moreover, Plaintiffs have already stated the information they seek could be relevant to the extent to which Defendant breached his duty to his clients, an issue separate and distinct from Plaintiffs' damages argument. Indeed, it appears the majority of Plaintiffs' document production requests are aimed at gathering information about Defendant's actions surrounding the settlement—the very conduct that give rise to Plaintiffs' legal malpractice claims. Defendant does not argue this information is irrelevant to the issue of an alleged breach of duty. Because of this, and for the reasons previously stated, Defendant fails to support his relevance objection. It is overruled.

### B.    Patient-Physician Privilege

Defendant objects to producing the medical records of the other plaintiffs participating in the underlying settlement. He contends the medical records are protected by the patient-physician privilege. Although neither party discusses the issue, the Court generally assumes, without deciding, that Missouri law applies.[27] Mo. Rev. Stat. § 491.060(5) provides that a licenced physician is incompetent to testify "concerning any information which he or she may have acquired from any patient while attending the patient in a professional character, and which

---

thus, they are held only to the standard of whether the settlement was within the realm of reasonableness.").

[27] The Court is without information as to the origin of the medical records or where the doctors generating the medical records practiced.

information was necessary to enable him or her to prescribe and provide treatment for such

patient . . . "  Although the plain language of the statute addresses competency to testify,

Missouri courts construe it as a privilege statute.[28]  This "privilege applies to medical records

and all aspects of discovery."[29]  The patient is the holder of the privilege, but the privilege is not

absolute.[30]  A patient may expressly or impliedly waive the privilege.  For example, patients

waive the privilege when they place their physical condition at issue in litigation.[31]  Although

this is the more common and often discussed occurrence of waiver, it is not the only way a

patient waives the privilege.  With some limited exceptions, disclosure of otherwise privileged

information to third parties waives the privilege.[32]  The party seeking to invoke the privilege

bears the burden of establishing it applies.[33]

Defendant's sole argument regarding the patient-physician privilege is that the plaintiffs

participating in the underlying settlement did not waive the privilege for the purposes of this

action by placing their medical conditions at issue in the Missouri state court actions.  Defendant

---

[28] *See State ex rel. Dean v. Cunningham*, 182 S.W.3d 561, 566 n.5 (Mo. 2006) (en banc).

[29] *Id.* at 567.

[30] *Id.* at 566 n.5, 567.

[31] *Id.*

[32] *See State v. Middaugh*, 802 S.W.2d 570, 573 (Mo. Ct. App. 1991) (finding that communication between a patient and a physician was not privileged because it was voluntarily and freely made in the presence of a third party); 1 *McCormick on Evidence* § 103 (6th ed. 2009) ("Obviously, the law has no reason to conceal in court what has been freely divulged on the public street, and the only question in such cases becomes the voluntariness of the revelation and the scope of the waiver."); 25 Charles Alan Wright, *et al.*, *Federal Practice and Procedure* § 5552, at 397 (1st ed. 1987) (stating that handing over records to a litigation adversary waives the privilege) (citing *Buffington v. Gillette Co.*, 101 F.R.D. 400, 404 (W.D. Okla. 1980)); s*ee also State ex rel. Gozenbach v. Eberwein*, 655 S.W.2d 794, 796 (Mo. Ct. App. 1983) (holding that a patient does not impliedly waive the patient-physician privilege by authorizing the custodian of medical records to release the records to a medical insurer, because to hold otherwise would render the privilege meaningless in today's society).

[33] *Rodriguez v. Suzuki Motor Corp.*, 996 S.W.2d 47, 62 (Mo. 1999) (en banc).

cites no authority in support of his argument. However, even if true, this argument does not establish the privilege applies. Defendant does not explain how he has standing to assert the patient-physician privilege when he is not the holder of the privilege. Defendant does not state whether he has contacted the patients to whom the medical records belong to determine whether they object to production. He also fails to describe in any detail the nature of the documents withheld or disclose who has had access to them. For example, the document production requests that could encompass medical records appear to be aimed at discovering records turned over to others during the underlying Missouri state court litigation.[34] If, in the underlying litigation, these records were produced to other plaintiffs' attorneys, the special master, or defense counsel, it is difficult to see how disclosure to these individuals would not waive the privilege. The Court lacks the information necessary to rule on any of these issues and therefore cannot determine that the patient-physician privilege applies. Because Defendant does not carry his burden to support his objection, it is overruled.

Defendant also argues HIPAA shields discovery of medical records in his possession. The arguments Defendant advances are substantially the same as those already raised in a prior motion—arguments considered and rejected by the Court.[35] The Court overrules Defendant's HIPAA objection for the same reasons previously articulated.

### C.      Attorney-Client Privilege and the Work Product Doctrine

Defendant contends a number of responsive documents are protected by the attorney-client privilege and/or the work product doctrine. He states the requests encompass written

---

[34] *See, e.g.,* Def.'s Resps. to Pls.' First Req. for Produc. of Docs. at 4-5, ECF No. 53-2 (seeking documents provided to the special master).

[35] *See* Order at 2-4, ECF No. 68.

communications between himself and his counsel as well as documents and communications from the underlying Missouri state court actions.

"In federal court, the determination of what is privileged depends upon the dictates of Rule 501 of the Federal Rules of Evidence."[36] Pursuant to Rule 501, state law governs the applicability and scope of attorney-client privilege in diversity actions.[37] In this case, neither party has informed the Court which state's law applies—or whether the same state's law applies to the attorney-client privilege claims regarding communications between Defendant and his counsel and communications between Defendant and the clients he represented in the Missouri state court actions. For the purposes of the instant motion, the Court assumes, without deciding, that Missouri law applies.

Missouri state law recognizes the attorney-client privilege in Mo. Rev. Stat. § 491.060(3), stating an attorney shall be incompetent to testify "concerning any communication made to the attorney by such attorney's client in that relation, or such attorney's advice thereon, without the consent of such client." Under Missouri common law:

> The attorney-client privilege attaches to: 1) Information transmitted by voluntary act of disclosure; 2) between a client and his lawyer; 3) in confidence; and 4) by a means which, so far as a client is aware, discloses the information to no third parties other than those reasonably necessary for the transmission of the information or for the accomplishment of the purpose for which it is to be transmitted. All four of [these] elements must be present for the privilege to apply. In addition, surrounding circumstances should be considered as they

---

[36] *ERA Franchise Sys., Inc. v. N. Ins. Co. of N.Y.*, 183 F.R.D. 276, 278 (D. Kan. 1998).

[37] *See* Fed. R. Evid. 501 ("[I]n civil actions and proceedings, with respect to an element of a claim or defense as to which State law supplies the rule of decision, the privilege of a witness, person, government, State, or political subdivision thereof shall be determined in accordance with State law."); *Sprague v. Thorn Americas, Inc.*, 129 F.3d 1355, 1368-69 (10th Cir. 1997) (discussing the application of state law versus federal law to the issue of attorney-client and work product privileges)*; ERA Franchise Sys., Inc.*, 183 F.R.D. at 278.

indicate the existence, or nonexistence, of any one of the elements.[38]

 "The privilege is limited to communications between the attorney and the client" and it is "the client's to claim."[39]  Further, the privilege survives the death of the client and may be invoked by "the personal representative of a deceased client."[40]

In diversity cases, the work product doctrine is still governed by the uniform federal standard outlined in Fed. R. Civ. P. 26.[41]  Rule 26(b)(5) provides that when a party withholds documents or other information based upon a privilege or work product immunity, the party must "(i) expressly make the claim; and (ii) describe the nature of the documents, communications, or tangible things not produced or disclosed—and do so in a manner that, without revealing information itself privileged or protected, will enable other parties to assess the claim."[42]

The party asserting objections based upon work product immunity and/or the attorney-client privilege, bears the burden of establishing that either or both apply.[43]  To carry that burden, the objecting party must describe in detail the documents or information to be protected and must provide precise reasons for the objection to discovery.[44]  Making this showing typically

---

[38] *State v. Longo*, 789 S.W.2d 812, 815 (Mo. Ct. App. 1990).

[39] *State v. Carter*, 641 S.W.2d 54, 57 (Mo. 1982) (en banc).

[40] *McCaffrey v. Estate of Brennan*, 533 S.W.2d 264, 267 (Mo. Ct. App. 1976).

[41] *Frontier Ref., Inc. v. Gorman-Rupp Co.*, 136 F.3d 695, 702 n.10 (10th Cir. 1998) ("Unlike the attorney client privilege, the work product privilege is governed, even in diversity cases, by a uniform federal standard embodied in Fed. R. Civ. P. 26(b)(3).").

[42] Fed. R. Civ. P. 26(b)(5).

[43] *See Peat, Marwick, Mitchell & Co. v. West*, 748 F.2d 540, 542 (10th Cir. 1984); *McCoo v. Denny's Inc.*, 192 F.R.D. 675, 680 (D. Kan. 2000); *Johnson v. Gmeinder*, 191 F.R.D. 638, 642 (D. Kan. 2000).

[44] *Id.* (quoting *Nat'l Union Fire Ins. Co. v. Midland Bancor, Inc.*, 159 F.R.D. 562, 567 (D. Kan. 1994)).

requires submission of a privilege log.[45]  A privilege log under District of Kansas precedent should include the following:

(1)     A description of the document explaining whether the document is a memorandum,  letter, e-mail, etc.;

(2)     The date upon which the document was prepared;

(3)     The date of the document (if different from # 2);

(4)     The identity of the person(s) who prepared the document;

(5)     The identity of the person(s) for whom the document was prepared, as well as the identities of those to whom the document and copies of the document were directed, including an evidentiary showing based on competent evidence supporting any assertion that the document was created under the supervision of an attorney;

(6)     The purpose of preparing the document, including an evidentiary showing, based on competent evidence, "supporting any assertion that the document was prepared in the course of adversarial litigation or in anticipation of a threat of adversarial litigation that was real and imminent;" a similar evidentiary showing that the subject of communications within the document relates to seeking or giving legal advice; and a showing, again based on competent evidence, "that the documents do not contain or incorporate non-privileged underlying facts;"

(7)     The number of pages of the document;

(8)     The party's basis for withholding discovery of the document (i.e., the specific privilege or protection being asserted); and

(9)     Any other pertinent information necessary to establish the elements of each asserted  privilege.[46]

Further, the objecting party must provide sufficient information to enable the Court to determine whether *each element* of the asserted objection is satisfied.[47]  This burden can be met

---

[45]  *Sprint Commc'ns Co. v. Vonage Holdings Corp.*, No. 05-2433-JWL-DJW, 2007 WL 1347754, at *2 (D. Kan. May 8, 2007).  A privilege log is not always necessary as long as the opposing party and the court can assess whether the claimed privilege applies to the document.  *Farha v. Idbeis*, No. 09-1059-JTM, 2010 WL 3168146, at *4 n.11 (D. Kan. Aug. 10, 2010).  For example, a party might satisfy Rule 26(b)(5)(A)(ii) by describing a particular communication in such narrative detail that a formal privilege log is unnecessary.  *Id.*

[46]  *In re Universal Serv. Fund Tel. Billing Practices Litig.*, 232 F.R.D. 669, 673 (D. Kan. 2005) (internal citations omitted).

[47]  *McCoo*, 192 F.R.D. at 680 (citing *Jones v. Boeing Co.*, 163 F.R.D. 15, 17 (D. Kan. 1995)).

only by an evidentiary showing based on competent evidence and cannot be discharged by mere conclusory assertions or blanket claims of privilege.[48]  Moreover, the objecting party has the burden to establish the existence of the privilege or immunity *prior to the time* the Court is asked to determine its sufficiency and applicability.[49]  A party's failure to meet the required showing when the Court is asked to rule upon the existence of the privilege is not excused because the document is later shown to be one that would have been privileged if a timely showing had been made.[50]

In this case, Defendant fails to provide any information about the nature of the documents withheld.  He fails to explain how each element of the attorney-client privilege and/or work product immunity is satisfied.  Indeed, he fails to state whether he has contacted the clients he represented in the Missouri state court actions to determine whether they sought to invoke the attorney-client privilege.  However, Defendant does state that in a similar legal malpractice action pending in Kansas state court, the judge ordered Defendant to send a letter to the clients he represented in the Missouri actions to determine whether they objected to Defendant discussing their claims.[51]  He states he produced to plaintiffs in that case the files of the clients who did not object.[52]  It is unclear why Defendant has not already produced that information in

---

[48] *See id.*; *Nat'l Union Fire Ins. Co.*, 159 F.R.D. at 567 (citations omitted); *Am. Cas. Co. of Reading, Pa. v. Healthcare Indem., Inc.*, No. 00-2301-DJW, 2001 WL 1718275, at *2 (D. Kan. May 21, 2001).

[49] *Rural Water Sys. Ins. Benefit Trust v. Group Ins. Adm'rs, Inc.*, 160 F.R.D. 605, 608 (D. Kan. 1995).

[50] *Am. Cas. Co. of Reading, Pa.*, 2001 WL 1718275, at *2 (citing *Peat, Marwick, Mitchell & Co. v. West*, 748 F.2d 540, 542 (10th Cir. 1984)).

[51] Def.'s Suggestions in Opp's to Pls.' Mot. to Compel Grant Davis' Complete Resps. to Pls.' First Request for Produc. at 2 n.1, ECF No. 64.

[52] *Id.*

this case or how the privilege could attach to documents previously produced in another case.[53]

Because Defendant has not met his burden to show the attorney-client privilege or work product doctrine apply, the Court could properly overrule Defendant's objections and require him to produce all responsive documents. Because some documents at issue involve nonparties and implicate their potential right to protect confidential communications between themselves and their counsel, the Court will allow Defendant a second opportunity to make the required showing. Unlike Defendant's patient-physician privilege objection—which appeared to involve medical records already produced to third parties—Defendant's attorney-client privilege and work product objections appear more colorable.

However, before the Court considers any further briefing regarding Defendant's attorney-client privilege and work product objections, the parties shall confer with several principles in mind: Generally, disclosure of otherwise privileged information to a third party results in a waiver of the privilege.[54] Therefore, documents knowingly produced to the adversary pharmaceutical companies in the underlying litigation would not appear to be subject to protection in this action.[55] Moreover, the attorney-client privilege and work product doctrine do not shield documents and facts that exist independently of the attorney-client relationship. For example, documents do not automatically become privileged or protected by virtue of the fact

---

[53] *See Maher v. Maher,* 951 S.W.2d 669, 674 (Mo. Ct. App. 1997) ("[C]ommunications between counsel for opposing parties are not protected by either the attorney-client or work product privileges. The attorney-client privilege protects only communications between the attorney and his client, not communications between an adversary and his opponent's counsel.").

[54] *See State ex rel. Polytech, Inc. v. Voorhees*, 895 S.W.2d 13, 14 (Mo. 1995) (en banc).

[55] *See Maher*, 951 S.W.2d at 674.

that they are provided to an attorney.[56]  Therefore, it is not apparent why some documents in the client files—such as medical records that were not prepared with the intention of seeking legal advice—would be privileged or subject to protection.  Finally, documents involving settlement offers or demands made on behalf of Plaintiffs or on behalf of Plaintiffs *and other clients* appear highly relevant and discoverable.[57]  In other words, Defendant cannot withhold documents pertaining to Plaintiffs' Missouri state court action or the settlement of their claims because some of these documents also pertain to other plaintiffs participating in the settlement.

The parties shall *meaningfully confer*[58] to discuss Defendant's objections, the above-stated general principles, the documents Plaintiffs are actually seeking, and the documents Defendant is required to produce.  If the parties continue to disagree about production of certain documents, within forty-five days (45) from the date of this order, Defendant may file a supplemental brief that explains how each and every element of the attorney-client privilege and/or work product doctrine are satisfied.  The Court will consider only Defendant's attorney-client privilege and work product objections and will not consider other objections overruled in the instant order.  Defendant shall attach a privilege log to his supplemental brief.  The privilege

---

[56] *St. Louis Little Rock Hosp., Inc. v. Gaertner*, 682 S.W.2d 146, 151 (Mo. Ct. App. 1984) ("A document which is not privileged does not become privileged by the mere act of sending it to an attorney.").

[57] *See Maher*, 951 S.W.2d at 674.

[58] The court directs the parties to *Mancia v. Mayflower Textile Services Co.*, an opinion from the District of Maryland that provides guidance regarding litigants' discovery obligations pursuant to the Federal Rules of Civil Procedure.  253 F.R.D. 354 (D. Md. 2008).  In that case, the court recognized that many of the discovery disputes at issue could be resolved or substantially minimized by greater communication and cooperation among counsel.  Similarly, the undersigned is of the opinion that greater communication and cooperation among counsel in this action regarding what documents Plaintiffs actually seek and what documents are legitimately attorney-client privileged or are trial preparation materials would substantially narrow, if not resolve, the dispute.  The court would not look favorably on future briefing on this issue that lacks precise detail.  *See id.* at 358-59 (discussing the abusive practice of reflexively objecting to discovery requests without considering whether there is a reasonable factual basis for the objection).

log shall include each of the nine categories of information outlined above. In addition, the privilege log should also explain: (1) whether the documents withheld pertain to the Plaintiffs to this action in addition to other plaintiffs Defendant represented (i.e., whether the documents were created on behalf of multiple clients) and (2) whether the communications have been disclosed to individuals outside Defendant's firm—for example, defense counsel, counsel for other plaintiffs in the underlying Missouri state court actions, or the special master.

Finally, prior to filing a supplemental brief, Defendant shall send a letter to clients who have objected and/or failed to respond to his prior letter in the Kansas state court action asking whether they sought to invoke the attorney-client privilege. Within seven (7) days from the date of this order and prior to mailing the letter to his former clients, Defendant shall submit the letter to Plaintiffs' counsel for approval. If the parties disagree about the text of the letter, they may e-mail the undersigned's chambers and request a status conference regarding the issue.

After Defendant determines whether these clients object to the discovery Plaintiffs seek, he shall inform Plaintiffs. Should Defendant chose to file a supplemental brief as outlined above, the brief shall inform the Court which clients object, which do not, and which have not responded. Plaintiffs may file a response to Defendant's supplemental brief within (14) days of its filing. No further briefing shall be allowed.

### D. Protective Orders and Confidentiality Orders

Defendant initially objected to a number of requests for production on the grounds that the requests sought information subject to protective orders entered in the underlying Missouri state court litigation and/or information subject to confidentiality agreements—presumably entered into by the pharmaceutical companies and the settling plaintiffs; however, Defendant does not inform the Court as to the nature of these confidentiality agreements. Additionally,

Defendant does not provide the orders and agreements he contends bar discovery in this action, and he fails to describe the documents withheld on this basis.  For example, it is unknown whether these documents involve confidential information about the pharmaceutical companies or Defendant's own clients.  If these documents are those which Plaintiffs would have had access to in the underlying Missouri litigation, it is difficult to see why they should not have access in this case.  In short, it is impossible for the Court to determine whether responsive documents are subject to the protective orders and confidentiality agreements, as Defendant contends.  As the party objecting to discovery, Defendant bears the burden of supporting his objections.  Defendant cites no authority for his suggestion that protective orders and confidentiality agreements would absolutely bar discovery of such information in this action.  Indeed, there is at least some authority to the contrary.[59]  For the foregoing reasons, these objections are overruled.

### E.　　Undue Burden and Overbreadth Objections

Defendant argues the discovery requests are overly broad and unduly burdensome because they are "ambiguous and boundless" and seemingly require Defendant to produce a huge volume of documents.[60]  As the party asserting an undue burden objection, Defendant has the burden to set forth facts justifying the objection "by demonstrating that the time or expense involved in responding to the requested discovery is unduly burdensome."[61]  This means

---

[59] *See, e.g., Abel v. Mylan, Inc.*, No. 09-CV-0650, 2010 WL 3910141, at *3-4 (N.D. Okla. Oct. 4, 2010) (addressing the differing approaches to discovery of information subject to confidentiality and protective orders entered in other cases and ordering production of such information in that case); *Melea Ltd. v. C.I.R.*, 118 T.C. 218, 225 (U.S. Tax Ct. 2002) (compelling production of materials subject to a protective order in another case and subjecting the parties in that action to the terms of the protective order).

[60] Def.'s Suggestions in Opp'n to Pls.' Mot. to Compel Grant Davis' Full and Complete Resps. to Pls.' First Reqs. for Produc. at 11, ECF No. 64.

[61] *G.D. v. Monarch Plastic Surgery*, No. 06-2184, 2007 WL 201150, at *2 (D. Kan. Jan. 22, 2007) (quoting *Horizon Holdings, L.L.C. v. Genmar Holdings, Inc.*, 209 F.R.D. 208, 213 (D. Kan. 2002)).

Defendant must show "not only undue burden or expense but that the burden or expense is unreasonable in light of the benefits to be secured from discovery."[62]  This imposes an obligation "to provide sufficient detail in terms of time, money and procedure required to produce the requested documents."[63]  Typically, this showing requires an "affidavit or other evidentiary proof of the time or expense involved" in responding to the discovery request.[64]

In support of his undue burden objection, Defendant provides an approximation of the number of pages of responsive documents.  He states that he possesses approximately 1,200 pages of medical records relating to William Schmitz and approximately 1,500 pages of medical records relating to Connie Booth.  Based on these figures, Defendant estimates production of his clients' medical records alone could total 84,000 to 105,000 pages.  Defendant, however, does not make an evidentiary showing of the time or expense involved in production.  Indeed, it appears he has not even surveyed potentially responsive documents in order to provide the Court with an accurate estimation of what compliance with the discovery requests would entail.  The Court finds Defendant has failed to support his undue burden objection.  Accordingly, it is overruled.  The Court also overrules in part Defendant's overbreadth objection.  Defendant does not offer an explanation as to how the discovery requests are overly broad except to say that they are "ambiguous" and "boundless."  A party resisting discovery does not carry his burden to substantiate his objection by merely offering conclusory statements.[65]  However, the Court does

---

[62] *Heartland Surgical Specialty Hosp. v. Midwest Div., Inc.*, No. 05-2164-MLB, 2007 WL 3171768, at *2 (D. Kan. Oct. 29, 2007) (quoting *Cardenas*, 232 F.R.D. at 380).

[63] *G.D.*, 2007 WL 201150, at *2 (quoting *Horizon Holdings*, 209 F.R.D. at 213).

[64] *Sonnino*, 220 F.R.D. at 653.

[65] *Cory v. Aztec Steel Bldg., Inc.*, 225 F.R.D. 667, 672 (D. Kan. 2005).

find that Request No. 2 is facially overbroad. This request seeks, "All other documents related to any of the Plaintiffs or to William Schmitz." This request could conceivably encompass any document even mentioning any of Defendant's former clients, including communications between Defendant and his counsel. Plaintiffs fail to explain how this request is not objectionable. Accordingly, the Court sustains Defendant's overbreadth objection as to Request No. 2 but overrules it as to the other document requests.

For the above reasons, Plaintiffs' motion to compel is granted in part and denied in part. The motion is granted insofar as the Court overrules Defendant's objections with the exception of the attorney-client privilege and work product objections and with the exception of Defendant's overbreadth objection, which is sustained as to Request No. 2 and overruled in all other respects. The Court defers ruling on the issue of whether the attorney-client privilege and/or work product doctrine shield responsive documents from discovery unless and until Defendant submits a supplemental brief and privilege log should the parties be unable to resolve the issue among themselves. Within thirty (30) days from the date of this order, Defendant shall produce all responsive documents with the exception of documents withheld on the basis of the attorney-client privilege and/or the work product doctrine. Defendant shall submit to Plaintiffs a privilege log for documents withheld on this basis. Defendant need not respond to Request No. 2. If Defendant continues to withhold documents on the basis of the attorney-client privilege and/or work product doctrine, he must file a supplemental brief and privilege log as previously detailed within forty-five (45) days of the date of this order.

Accordingly,

**IT IS THEREFORE ORDERED** that Plaintiffs' Motion to Compel Grant Davis' Full and Complete Responses to Plaintiff's First Requests for Production (ECF No. 53) is hereby

granted in part and denied in part.  The Court defers ruling on Defendant's attorney-client privilege and work product objections

**IT IS FURTHER ORDERED** that within forty-five (45) days from the date of this Memorandum and Order, Defendant may file a supplemental brief and privilege log as previously detailed.  Plaintiffs may file a response within fourteen (14) days from the date when Defendant files his supplemental brief and privilege log.  No further briefing shall be allowed.

**IT IS FURTHER ORDERED** that within thirty (30) days from the date of this order, Defendant shall produce all responsive documents with the exception of documents withheld on the basis of the attorney-client privilege and/or the work product doctrine. Defendant shall submit to Plaintiffs a privilege log for documents withheld on this basis.   Responsive documents containing personal, medical, or financial information shall be deemed "Confidential" and subject to the terms of the protective order (ECF No. 73) entered in this action.  Defendant need not respond to Request No. 2.

**IT IS SO ORDERED.**

Dated this 28th day of April, 2011, at Topeka, Kansas.


s/ K. Gary Sebelius
K. Gary Sebelius
U.S. Magistrate Judge