IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

| | | |
|---|---|---|
| DOROTHY SCHMITZ, et al., | ) | |
| | ) | |
| **Plaintiffs,** | ) | |
| | ) | **CIVIL ACTION** |
| v. | ) | |
| | ) | **No. 10-4011-KHV** |
| GRANT DAVIS, | ) | |
| | ) | |
| **Defendant.** | ) | |
| | ) | |

**MEMORANDUM AND ORDER**

Dorothy Schmitz, Jill Schmitz-Noble, Bill Schmitz, LaDonna Oliphant, Neeley Schmitz and David Schmitz bring legal malpractice claims against Grant Davis. Plaintiffs allege that because of defendant's negligence, fraud and breach of fiduciary duty, their legal interests in claims by their deceased husband and father, William Schmitz, lost settlement value. The claims which plaintiffs settled asserted that Bristol-Myers Squibb Company ("Bristol-Myers") failed to take measures to prevent Robert Courtney, a pharmacist, from diluting chemotherapy drugs. Hundreds of plaintiffs brought similar claims which the parties settled according to a "Global Settlement Agreement."

This matter comes before the Court on Defendant Grant Davis' Motion For Summary Judgment (Doc. #295) filed April 11, 2016.[1] Defendant asserts that the statute of limitations bars plaintiffs' claims.

In Booth v. Davis, No. 10-4010-KHV, the Court recently addressed Davis' motion for summary judgment in a case with similar claims. See Memorandum And Order (Doc. #337) in Case

---

[1] On July 15, 2015, defendant filed this motion under seal. See Defendant Grant Davis' Motion For Summary Judgment (Doc. #251). On March 23, 2016, the Court directed the parties to file public versions of all documents previously filed under seal, with confidential medical and personal identifying information redacted. See Memorandum And Order (Doc. #284).

No. 10-4010-KHV, filed April 25, 2016.  In <u>Booth</u>, the Court set out a detailed legal framework and analysis of the issues which defendant's motion in this case presents.  <u>See id.</u> The Court hereby incorporates by reference the law set out in <u>Booth</u>.  For reasons set forth below and more fully detailed in <u>Booth</u>, the Court finds that defendant's motion should be sustained.

**I.     Facts**

For purposes of summary judgment, the following facts are either uncontroverted or construed in the light most favorable to plaintiffs.

A.     <u>The Suit Against Courtney Pharmacy, Robert Courtney, Eli Lilly And Bristol Myers</u>

On September 6, 2002, Grant Davis and his law firm, Davis, Bethune & Jones, LLC ("DBJ") filed an action in state court in Jackson County, Missouri on behalf of Dorothy Schmitz, individually and as plaintiff ad litem for William Schmitz.  Plaintiffs sued Courtney Pharmacy, Inc. d/b/a/ Research Medical Tower Pharmacy, Robert Courtney and Bristol-Myers.  <u>See</u> Plaintiffs' Short Form Petition (Doc. #252-2).  The lawsuit alleged that William Schmitz suffered injuries on account of diluted chemotherapy medication which he received from Courtney.

Bristol-Myers and Eli Lilly and Company ("Eli Lilly) (another pharmaceutical company involved in similar lawsuits) made a global settlement offer.  Davis and his associates told plaintiffs that if they did not participate in the Global Settlement Agreement they would have to hire a different lawyer.  Plaintiffs believed that they had no choice but to participate in the Global Settlement Agreement.  Each plaintiff, however, signed a "Disclosure of Global Settlement" and a "Release and Settlement Agreement."  The disclosure stated that Davis' law firm represented most of the plaintiffs in more than 300 separate lawsuits regarding Courtney's dilution of chemotherapy medication.  It further stated that Bristol-Myers and Eli Lilly had made a joint settlement offer to

resolve all of the cases and to set aside money for future cases against them.  The disclosure referred to the settlement agreement and by signing the disclosure, plaintiffs represented that they understood that they had the right to opt out of the settlement agreement and pursue their claims separately. They also represented that they understood that a Special Master would determine their right to funds under the settlement agreement.[2]  Plaintiffs later testified that they never saw the document which set forth the terms of the settlement.

The settlement agreement provided that a settlement fund of no less and no more than a specified amount would be established through binding arbitration.  Plaintiffs acknowledged that Bristol-Myers and Eli Lilly had offered Georgia Hayes (plaintiff in a similar case) separate settlements of approximately $1.45 million each and that Hayes would not be participating in the distribution of funds by the Special Master.

Plaintiffs filled out and submitted a Claim Form which stated that plaintiffs agreed to give up their rights against Bristol-Myers and Eli Lilly.

---

[2]      The Release and Settlement Agreements provided in pertinent part as follows:

2. **Settlement Amount**. In consideration of the Release and Discharge set forth above, claimants hereby accept entitlement to a settlement amount to be determined by a Special Master appointed by the Court. Claimants acknowledge that they have consulted with their attorneys prior to executing this Agreement, and further acknowledge: (1) that they understand the process by which settlement amounts will be determined by the Special Master; and (2) that they have agreed to accept the settlement amount as determined by the Special Master as a full and complete compromise of all claims against Lilly and/or [Bristol-Myers]. The amount determined by the Special Master shall be set forth in the attached Certification of Special Master.

Doc. #296-5 at 3.

On May 20, 2003, the Special Masters[3] awarded plaintiffs $284,765.46.  See Doc. #296-7.

On June 25, 2003, Missouri Circuit Judge Lee Wells – who was presiding over the global settlement

proceedings  – approved the Proposed Allocation of Wrongful Death Settlement.  See Doc. #296-8.

On July 10, 2003, each plaintiff signed an individual Wrongful Death Settlement Sheet

acknowledging receipt of a copy of the settlement sheet.  Plaintiffs also stated that they agreed with

its contents and approved the payment of the attorney's fees.  See Doc. #296-9.  Jill Schmitz-Noble

asked for information about other global settlement claimants, including a list of their names.  Davis

and his associate, Shawn Foster, told Schmitz-Noble that all aspects of the Global Settlement

Agreement were highly confidential and could not to be shared with anyone.

Neeley Schmitz testified that he did not believe it was right that Hayes received $2. 9 million

and that there was a "huge discrepancy" between that amount and the amount they were receiving.[4]

---

[3]      Although the Release And Settlement Agreement referred to "A Special Master," two Special Masters determined the awards.

[4]      Neeley Schmitz testified that at their first meeting with Foster, plaintiffs asked for information about the global settlement, as follows:

> Q.  All right. Well, what do you recall your sister asking about the other clients? Was she asking about the types of cancers they had or how many people were in their family or what?
>
> A. I think there is – when you're – when you're in the situation that we're in and you have lost a loved one because somebody diluted their medicine, you want to know about people that are in similar situations with you.  You want to know did they survive, are they still fighting, are they still receiving treatment.  There is just things you want to know. You want to know if we're being compared fairly.
>
> Q. All right. Well, so when your sister asked if other people had survived and were still receiving treatment, what did Mr. Foster say?
>
> A. We couldn't have that information.

(continued...)

Doc. #296-10 at 3.

Jill Schmitz-Noble testified that when she signed the release and settlement agreement, she understood that Hayes had a separate settlement for a greater amount than her family's settlement. She testified that she did not know the total settlement amount and that when she signed the release and settlement agreement, she did not think her attorneys were coming clean with her.

Neeley Schmitz testified that plaintiffs trusted their attorneys when they informed them that they had to agree to participate in the Global Settlement Agreement. He also testified that he did not look over the documents closely and that he trusted that what was in the documents was what Foster had told them. Doc. #311-2 at 3, 10-11.

> B.      The Tilzer Case

On December 27, 2009 plaintiffs in this case learned of the Tilzer decision.[5]

> C.      The Complaint And Pretrial Order In This Case

On February 3, 2010, plaintiffs filed the complaint in this case. The Pretrial Order (Doc. #269-1) has now been filed and supercedes the complaint.

Plaintiffs allege that they hired Davis to represent them in a lawsuit against Bristol-Myers for negligence in failing to protect their husband and father, William Schmitz, from the danger of diluted cancer treatment drugs. Plaintiffs allege that Davis represented clients in 244 of 348 cases involving similar claims against Bristol-Myers and Eli Lilly and that Davis made aggregate

---

[4](...continued)
Doc. #311-2.

[5]      The Court incorporates by reference the discussion of Tilzer v. Davis, Bethune & Jones, LLC, 288 Kan. 477, 486 (2009), in the Court's Memorandum And Order (Doc. #337) in Booth v. Davis, No. 10-4010-KHV, filed April 25, 2016, at 5-9.

settlement demands without advising his clients (including plaintiffs) that (a) the first-filed Hayes case was selected to go to trial first; (b) the Special Masters determined settlement amounts according to tiers, based on the timing of claims; and (c) as the sole member in the first tier, Hayes received much more in settlement than plaintiffs with claims in the second and third tiers.  Plaintiffs also allege that Davis acted to conceal or failed to disclose (a) the specific amounts awarded to all families and the criteria and methodology used to determine the awards; (b) serious conflicts of interest between Davis and each of his clients; and (c) the fact that Davis had a strong interest in persuading each of his clients to participate in the global settlement agreement so that he could obtain his aggregate fee.  Plaintiffs seek loss of settlement value and disgorgement of attorney fees.

## II.    Analysis

Davis contends that at the latest, the two-year statute of limitations began running on July 10, 2003 – when plaintiffs received the settlement funds.  At that point, they knew that Hayes had received vastly more in her settlement with Bristol-Myers and Eli Lilly.  Plaintiffs argue that their claims accrued on December 27, 2009 when they learned of the Tilzer decision dated April 3, 2009. Plaintiffs thus argue that the complaint which they filed on February 3, 2010 was timely.

A layperson is not expected to have legal expertise or to hire a lawyer for a second opinion. See Dearborn, 248 Kan. at  266.  Here, however, by July 10, 2003, plaintiffs knew that they had received a settlement which was a great deal less than Hayes (thus putting them on notice of the alleged injury).  On July 10, 2003, they also knew that their attorney had handled their settlement and most of the settlements in the Courtney cases.  Thus they knew or reasonably should have known that the alleged injury was due to attorney conduct.  At that point they had knowledge of the material facts essential to their cause of action: an attorney-client relationship, negligence or breach

-6-

of duty by Davis, proximate cause and injury.  They could have filed suit at that time, just as the Tilzers did**.**  The Court therefore finds that at the latest, plaintiffs' cause of action accrued by July 10, 2003.  The two-year statute of limitations, K.S.A. § 60-513(b), thus bars plaintiffs' legal malpractice claims.  The Kansas Supreme Court decision in Tilzer had no material effect on when plaintiffs' cause of action accrued: it vested no rights in plaintiffs which did not already exist.  And while it may have provided encouragement to sue, Kansas law does not toll a statute of limitations, or prevent it from running in the first place, pending the development of legal authority which is favorable to plaintiffs' claims.

**IT IS THEREFORE ORDERED** that Defendant Grant Davis' Motion For Summary Judgment (Doc. #295) filed April 11, 2016 be and hereby is **SUSTAINED**.

Dated this 29th day of April, 2016 at Kansas City, Kansas.

s/ Kathryn H. Vratil
KATHRYN H. VRATIL
United States District Judge